KING, C.J.,
 

 for the Court.
 

 ¶ 1. Reginald Clay was indicted in November 2006 for possession of cocaine, approximately 2.37 grams. Because he was a habitual offender and this was his second drug offense, the State sought an enhanced sentence. Convicted in abstentia, Clay was sentenced to a term of life in the custody of the Mississippi Department of Corrections (MDOC) without eligibility for probation, parole, earned time, or good time credit. Aggrieved, Clay appeals alleging the following assignments of error: (1) whether a life sentence as a habitual offender for possession of cocaine is disproportionate to the crime and constitutes cruel and unusual punishment, and (2) whether the trial court erred in denying Clay’s motion for a new trial because the verdict is against the overwhelming weight of the evidence. Finding no error, we affirm the judgment of the trial court.
 

 FACTS
 

 ¶ 2. While on general patrol in Meridian, Mississippi at approximately 1:35 a.m. on July 23, 2006, Deputy Ruston Russell and Officer Jerome Moore, saw a blue and white Oldsmobile run a stop sign. Deputy Russell turned on his lights and sounded his siren a couple of times to summon the driver of the vehicle to pull over. The driver slowed down, but he drove an additional 200-300 feet before coming to a stop. During that time, the officers noticed the back-seat passenger making suspicious movements.
 

 ¶ 3. As Deputy Russell requested the driver to step out of the car, he smelled alcohol coming from the vehicle and marijuana coming from the driver’s person. The driver identified himself as Roger Hearn. Hearn stated that he had just left the club and had been drinking and had smoked some marijuana a few hours earlier. Deputy Russell then asked Hearn the identity of the passengers. Hearn identified the front-seat passenger as Terrance Bryant and the back-seat passenger as his cousin, Reginald Clay. Deputy Russell testified that he then asked the back-seat passenger his name. After Clay told Deputy Russell his name was “Mark Clay,” Deputy Russell asked Clay to step out of the car. Deputy Russell questioned Clay and conducted a protective pat down. Deputy Russell testified that during the pat down of Clay, a small crack pipe dropped out of Clay’s pocket onto the ground and shattered. Deputy Russell also stated that he found a small rock of crack cocaine in Clay’s right-front pocket.
 

 ¶ 4. The officers testified that they were unable to retrieve any part of the crack pipe; however, they were able to conduct a field spot test (color reagent test) on the rock retrieved from Clay’s pocket. This test required placing the rock sample in a pink liquid known as cobalt thiocyanate. Forensic Scientist Grady Downey testified that if the sample contains cocaine base, a chemical reaction occurs and the liquid becomes blue. Deputy Russell and Officer Moore testified that the rock retrieved from Clay’s pocket tested positive for cocaine. Clay was indicted in November 2006 for possession of cocaine, approximately 2.37 grams, as a habitual offender pursuant to Mississippi Code Annotated section 99-19-83 (Rev.2007). Because this was Clay’s second drug offense, the State sought enhanced punishment under section 41-29-147 of the Mississippi Uniform Con
 
 *746
 
 trolled Substance Law.
 
 [1]
 

 ¶ 5. On February 19, 2008, the trial court conducted a pretrial hearing. At that time, Clay declined to enter a guilty plea and informed the trial court that he intended to go to trial the following day. On February 20, 2008, the morning of trial, Clay did not show for trial, so he was tried in abstentia. The trial court issued a bench warrant for Clay’s arrest and ordered his bond forfeited. On February 21, 2008, a jury convicted Clay, in abstentia, of possession of cocaine (2.37 grams). On March 22, 2008, Clay was located, arrested, and returned to the custody of the Lauderdale County Sheriffs Department. On April 17, 2008, Clay was sentenced to serve life in the custody of the MDOC without eligibility of probation, parole, earned time, or good-time credit. Thereafter, Clay filed a motion for new trial or, in the alternative, for a judgment notwithstanding the verdict (JNOV). On April 18, 2008, the trial court denied Clay’s motion for a new trial or, alternatively, for a JNOV.
 

 ANALYSIS
 

 I.Habitual-offender Status
 

 ¶ 6. Clay argues that his sentence as a habitual offender to life without parole is unduly harsh and constitutes cruel and unusual punishment. Clay asserts that the trial judge did not appear to compare the gravity of the offense with the harshness of the sentence before imposing a life sentence.
 

 ¶ 7. Under Mississippi Code Annotated section 99-19-83, if a defendant has been previously convicted of at least two prior state and/or federal felony offenses, one being a violent crime, arising out of different transactions at different times and has been sentenced to and served one year or more, it is mandatory that he be sentenced to life. During sentencing, the State introduced records maintained by the MDOC and a fingerprint card into evidence. The pen paks established the following facts:
 

 1. In Cause No. 148-92, Clay pled guilty to robbery and was sentenced on February 23, 1993, to serve a term of fifteen years in the custody of the MDOC with eleven years suspended, four years to serve, followed by five years of supervised probation for robbery. Clay was paroled on April 29, 1994, after serving one year and three months. On December 8, 1995, Clay’s probation in Cause No. 148-92 was revoked, and Clay was sentenced to serve eleven years in the custody of the MDOC. Clay was paroled on July 21, 1998, after serving a term of two years and nine months.
 

 2. In Cause No. 313-93, Clay pled guilty to possession of cocaine and was sentenced on August 30, 1993, to serve one year, to run concurrently with the robbery conviction. Clay served seven months for this conviction.
 

 3. In Cause No. 841-00, Clay pled guilty to attempted uttering forgery and was sentenced on May 31, 2001, to serve a term of seven years in the custody of the MDOC, six years and three hundred and sixty-four days suspended with one day to serve, followed by five years of post-release supervision. On November 28, 2001, Clay’s probation was revoked. Clay was sentenced to serve six years and three hundred sixty-four days in the custody of the MDOC. Clay initially served four years and three and a half months and was released on earned-release supervision (ERS) on December 18, 2005. Clay violated ERS and was sent back to serve an additional year
 
 *747
 
 and one month. Clay served a total of five years and four and a half months.
 

 4. In Cause No. 240-02, Clay pled guilty to felony DUI and was sentenced on October 2, 2002, to serve one year to run consecutive to the probation revocation in Cause No. 841-00. .
 

 ¶ 8. The evidence established that: (1) Clay had at least two separate felony convictions, one of which was for a violent crime, robbery; and (2) he had served at least one year on each of his two felony convictions.
 
 See Magee v. State,
 
 542 So.2d 228, 236 (Miss.1989) (holding that robbery is a crime of violence for purposes of habitual-offender sentencing).
 

 ¶ 9. Clay asserts that while he received enhanced punishment as a habitual offender and because he had a prior drug conviction, when the proportionality test in
 
 Solem
 
 analysis is applied to his sentence, it is shown to be patently, unconstitutionally disproportionate to his offense and should be vacated. “Unless a threshold comparison of the crime committed to the sentence imposed leads to an inference of ‘gross disproportionality,’ ” the supreme court has held that it will “not engage in the analysis set forth in
 
 Solem v. Helm,
 
 463 U.S. 277, 292, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983).”
 
 Ford v. State,
 
 975 So.2d 859, 869(¶ 39) (Miss.2008). “Sentencing is within the complete discretion of the trial court and not subject to appellate review if it is within the limits prescribed by statute.”
 
 Hoops v. State,
 
 681 So.2d 521, 537 (Miss.1996). “[T]he general rule in [Mississippi] is that a sentence cannot be disturbed on appeal so long as it does not exceed the maximum term allowed by statute.”
 
 Fleming v. State,
 
 604 So.2d 280, 302 (Miss.1992). “A sentence that is grossly disproportionate to the crime committed is subject to attack on Eighth Amendment grounds.”
 
 Williams v. State,
 
 794 So.2d 181, 188(¶ 30) (Miss.2001) (overruled on other grounds).
 

 ¶ 10. Although life imprisonment is a rather severe sentence, the trial court has complete discretion in sentencing as long as it does not exceed the maximum as defined by statute. According to Mississippi Code Annotated section 41-29-139(b)(1) (Rev.2005), the maximum sentence for possession of a Schedule II controlled substance is imprisonment for not more than thirty years. Because this was a second drug offense for Clay, he was subject to twice the maximum sentence or sixty years. Miss.Code Ann. § 41-29-147. As a habitual offender, Clay was also subject to an additional enhanced penalty under section 99-19-83. That enhancement calls for a mandatory life sentence. After taking into consideration the two enhancements, it is not necessary for this Court to engage in the
 
 Solem
 
 analysis because a threshold comparison of the crime committed to the sentence imposed does not infer a gross disproportionality. Accordingly, we find that this issue is without merit.
 

 II. Motion for a New Trial
 

 ¶ 11. “A motion for a new trial simply challenges the weight of the evidence.”
 
 Sheffield v. State,
 
 749 So.2d 123, 127(¶ 16) (Miss.1999). If such motion is denied by the trial court, the appellate court will reverse that decision only if the trial court abused its discretion.
 
 Gleeton v. State,
 
 716 So.2d 1083, 1088(¶ 18) (Miss. 1998) (overruled on other grounds). “We will not order a new trial unless convinced that the verdict is so contrary to the overwhelming weight of the evidence that, to allow it to stand, would be to sanction an unconscionable injustice.”
 
 Groseclose v. State,
 
 440 So.2d 297, 300 (Miss.1983). “Factual disputes are properly resolved by the jury and do not mandate a new trial.”
 
 McNeal v. State,
 
 617 So.2d 999, 1009 (Miss.1993).
 

 
 *748
 
 ¶ 12. Clay was not the driver or owner of the car. He argues that the State failed to present evidence that linked the cocaine found under the carpet in the back seat of the vehicle to him. Clay claims that besides the testimony of Deputy Russell and Officer Moore, there was no evidence, i.e., report, to suggest that the rock-like substance found on Clay was cocaine. Clay maintains that to allow the verdict to stand would sanction an unconscionable injustice.
 

 ¶ 13. The jury heard testimony from Deputy Russell and Officer Moore that the bag of cocaine was found in the back seat of the vehicle and that Clay was the only passenger in the back seat. Both officers testified that Clay exhibited suspicious behavior before the stop and behaved in a nervous-like manner during the stop, unlike the other persons in the vehicle. Also, a crack pipe and a small amount of cocaine were found on Clay's person during the pat-down search. Clay told Deputy Russell that his name was “Mark Clay,” which was a false name.
 

 ¶ 14. In addition, the defense rested without calling any witnesses or presenting any evidence or testimony to refute the testimony of Deputy Russell, Officer Moore, or Downey. There was sufficient evidence presented to support the jury’s verdict. Accordingly, when viewed in the light most favorable to the verdict, we find that the jury’s verdict is not against the overwhelming weight of the evidence, and that the trial court did not abuse its discretion by denying Clay’s motion for a new trial.
 

 ¶ 15. Therefore, for the reasons stated, we affirm the judgment of the trial court.
 

 ¶ 16. THE JUDGMENT OF THE CIRCUIT COURT OF LAUDERDALE COUNTY OF CONVICTION OF POSSESSION OF COCAINE (2.37 GRAMS) AND SENTENCE AS A HABITUAL OFFENDER OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITHOUT ELIGIBILITY FOR PROBATION, PAROLE, EARNED TIME, GOOD-TIME CREDIT, REDUCTION OR SUSPENSION IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO LAUDERDALE COUNTY.
 

 LEE AND MYERS, P.JJ., IRVING, GRIFFIS, BARNES, ISHEE, CARLTON AND MAXWELL, JJ., CONCUR. ROBERTS, J., CONCURS IN PART AND IN THE RESULT.
 

 [1]
 

 . Miss.Code Ann. § 41-29-147 (Rev.2005).