ISHEE, J.,
for the Court:
¶ 1. On May 28, 2006, Jason Bernard Foxworth was arrested for possession of a controlled substance, in addition to other charges. Following a jury trial held in the Harrison County Circuit Court in June 2010, Foxworth was convicted of possession of a controlled substance and sentenced as a habitual offender to life, without eligibility for parole or probation, in the custody of the Mississippi Department of Corrections (MDOC). Foxworth now appeals, asserting the circuit court erred by (1) denying his motion to suppress evidence found during the search of his person incident to his arrest; (2) granting the State’s motion to amend the indictment so as to allege habitual-offender status; (3) limiting him to six peremptory challenges during jury venire; (4) overruling his motion for a new trial or, in the alternative, a judgment not withstanding the verdict (JNOV) based on the State’s failure to prove he “knowingly” possessed cocaine; and (5) sentencing him to life imprisonment without eligibility for parole or probation in violation of Mississippi Code Annotated section 41 — 29—150(g) (Supp.2011). Finding no error, we affirm.
FACTS AND PROCEDURAL HISTORY
¶ 2. On May 28, 2006, at approximately 5:30 p.m., Officer Christopher L. Keckler of the Gulfport Police Department stopped *1181 a vehicle for speeding. Foxworth was the driver of the vehicle. Initially, Foxworth provided Officer Keckler with a false name. He then corrected himself and admitted he did not have a driver’s license. Foxworth was placed under arrest for driving without a license, having no insurance, speeding, and providing false information. Officer Keckler proceeded to conduct a search incident to Foxworth’s arrest. During the search, Officer Keck-ler required Foxworth to spread his feet as he ran his hand down the outside of Foxworth’s clothing. He thén felt an object inside of Foxworth’s pants. The object began to fall, and Officer Keckler grabbed the object with one hand while reaching inside Foxworth’s pants with his other hand. At that point, he retrieved the object from Foxworth’s undergarments. The object was a clear plastic bag containing an off-white substance Officer Keckler recognized as cocaine. Foxworth was then placed under arrest for possession of cocaine.
¶ 3. On June 23, 2010, a jury in the Harrison County Circuit Court found Fox-worth guilty of possession of a controlled substance. He was sentenced as a habitual offender to life imprisonment without eligibility for parole or probation. The sentence was ordered to be served concurrently with the sentence he is presently serving for an unrelated charge. All sentences were ordered to be served in the custody of the MDOC. After his conviction, Foxworth filed a motion for a new trial or, in the alternative, a JNOV. The circuit court overruled Foxworth’s post-trial motion. Foxworth now appeals.
DISCUSSION
I. Search Incident to Arrest
¶ 4. In his first assignment of error, Foxworth argues the circuit court improperly denied his motion to suppress the evidence obtained in the search incident to his arrest. He contends the search exceeded the permissible scope of a search incident to arrest for non-violent misdemeanor offenses. Foxworth argues he was subjected to a strip search in violation of his constitutional rights.
¶ 5. “A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification.” United States v. Robinson, 414 U.S. 218, 235, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973). In a search incident to arrest, an officer is justified in searching “not only for weapons but also for evidence that might be easily destroyed.” Ellis v. State, 573 So.2d 724, 726 (Miss.1990). In these circumstances, the narrow limits of a Terry[1] search do not apply. Id.
¶ 6. While a search incident to arrest can exceed the scope of some other warrantless searches, the scope of the search is not limitless. “As intrusiveness increases, the amount of suspicion necessary to justify the search correspondingly increases.” United States v. Vega-Barvo, 729 F.2d 1341, 1344 (11th Cir.1984). There are certain limitations regarding the use of strip searches. While a strip search has not specifically been defined by Mississippi common law, surrounding jurisdictions have addressed the term. A strip search has been defined as “any exposure or observation of a portion of a person’s body where that person has a ‘reasonable expectation of privacy.’ ” Doe v. Calumet City, Ill., 754 F.Supp. 1211, 1215 n. 9 (N.D.Ill.1990) (citation omitted). A strip search has also been defined as “the removal of the arrestee’s clothing for inspection of the under clothes and/or body.” *1182 State v. Nieves, 383 Md. 573, 861 A.2d 62, 70 (2004) (citing William J. Simonitsch, Visual Body Cavity Searches Incident to Arrest: Validity Under the Fourth Amendment, 54 U. Miami L.Rev. 665, 667 (2000)). Black’s Law Dictionary 1469 (9th Ed.2009) defines a strip search as a “search of a person conducted after that person’s clothes have been removed, the purpose [usually] being to find any contraband the person might be hiding.”
¶ 7. In this case, Officer Keckler reached inside Foxworth’s pants and undergarments to remove an item he believed to be a controlled substance. At no point was Foxworth forced to remove any clothing. There is also no indication that any part of his body was ever exposed to the public. He remained fully clothed during the entire search. The Mississippi Supreme Court has upheld cases where the officer pulled a bag out of the defendant’s belt line and also where officers retrieved evidence from the pocket of the defendant. See Ellis, 573 So.2d at 725; Johnson v. State, 999 So.2d 360, 365 (¶ 23) (Miss.2008). While those cases do not directly address the issue of a strip search, the conduct of the police officers in those cases was found to be appropriate. The actions taken by Officer Keckler are similar to the conduct in those cases. He simply retrieved evidence from inside Foxworth’s clothing. Because no strip search occurred and the search incident to arrest was appropriate, we find no error.
II. Habitual-offender Status
¶ 8. Foxworth asserts the circuit court erred by granting an amendment to the indictment so as to allege habitual-offender status. Foxworth argues his status as a habitual offender is invalid because the offense date of his second conviction occurred after the offense date in the instant case. Foxworth was first convicted in December 1997 of two counts of armed robbery. His second conviction of capital murder occurred in November 2007. His conviction in this case occurred on June 23, 2010.
¶ 9. This Court has previously held there is “no requirement that a prior felony conviction used to enhance a sentence must have been entered before the crime occurred for which [the] sentence is to be pronounced.” Sims v. State, 775 So.2d 1291, 1293 (¶ 12) (Miss. Ct.App.2000). The pertinent habitual-offender statute states:
Every person convicted in this state of a felony who shall have been convicted twice previously of any felony or federal crime upon charges separately brought and arising out of separate incidents at different times and who shall have been sentenced to and served separate terms of one (1) year or more in any state and/or federal penal institution, whether in this state or elsewhere, and where any one (1) of such felonies shall have been a crime of violence shall be sentenced to life imprisonment, and such sentence shall not be reduced or suspended nor shall such person be eligible for parole or probation.
Miss.Code. Ann. § 99-19-83 (Rev.2007).
¶ 10. The only date requirement in the statute is that the enhancing conviction precede the new conviction. Sims, 775 So.2d at 1293 (¶ 13). There is no requirement regarding the date of the offense of each conviction. Here, Foxworth was previously convicted in December 1997 and November 2007, both of which occurred before the June 2010 conviction in this case. Because of his prior two convictions, Foxworth is subject to the habitual-offender statute. Accordingly, we find the circuit court did not err by granting an amendment to the indictment so as to allege habitual-offender status.
*1183 III. Peremptory Challenges
¶ 11. Foxworth next argues the circuit court erred by limiting him to six peremptory challenges during the jury ve-nire. He contends that under Mississippi Rule of Uniform Circuit and Court 10.01, he should have been allowed twelve peremptory challenges because he faced life in prison due to his status as a habitual offender.
¶ 12. Rule 10.01 states in part:
In cases wherein the punishment may be death or life imprisonment, the defendant and the prosecution shall have twelve (12) peremptory challenges for the selection of the regular twelve jurors. These challenges may not be used in the selection of an alternate juror or jurors.
In felony cases not involving the possible sentence of death or life imprisonment, the defendant and the prosecution shall have six (6) peremptory challenges for the selection of the twelve regular jurors. These challenges may not be used in the selection of an alternate juror or jurors.
¶ 13. The indictment charges Foxworth with possession of a controlled substance, which is not a category of offenses for which one is entitled to twelve peremptory challenges. The rule entitling a' defendant to additional peremptory challenges only applies to capital offenses. A capital offense is defined as, “criminal cases, offenses[,] and crimes punishable by death or imprisonment for life in the state penitentiary.” Miss.Code Ann. § 1-3-4 (Rev. 2005). The statutory sentence for Fox-worth’s conviction of possession of cocaine is “imprisonment for not less than four (4) years nor more than sixteen (16) years.” Miss.Code Ann. § 41-29-139(c)(l)(C) (Supp.2011). Possession of a controlled substance, such as cocaine, is a noncapital offense. While Foxworth did face life imprisonment, he was only subject to this sentence because of his status as a habitual offender. Case law clearly establishes that the possibility of life imprisonment as a habitual offender does not entitle one to twelve peremptory challenges under Rule 10.01. See, e.g., Yates v. State, 396 So.2d 629 (Miss.1981).
¶ 14. The Mississippi Supreme Court addressed this exact issue in Yates, 396 So.2d at 630. In Yates, the defendant was convicted of cattle theft and sentenced as a habitual offender to life imprisonment. Id. The supreme court stated: “The fact that the indictment advised the defendant that he was subject to a life imprisonment punishment as a habitual criminal ... has nothing to do with a special venire or twelve peremptory challenges.” Id. Habitual-offender status is not considered a capital crime and does not entitle one to additional peremptory challenges because the statute “does not make it a crime for one to be a multiple offender even though it affects severity of punishment.” Id. (citing Wilson v. State, 395 So.2d 957, 961 (Miss.1981)).
¶ 15. The supreme court addressed the issue again in Osborne v. State, 404 So.2d 545 (Miss.1981), shortly after the Yates decision. In Osborne, the defendant was convicted of carrying a concealed weapon after a felony conviction. Id. at 546. He was sentenced to life imprisonment as a habitual offender. Id. The supreme court found the principal offense was neither a capital crime nor an offense that entitled the defendant to twelve peremptory challenges. The supreme court reasoned:
The jury only determines the guilt of the accused on the principal offense and does not consider the prior convictions which bring into consideration the life sentence under the habitual[-]offender[ ] statute. The trial judge, in a separate hearing, determines the applicability of the habitual[-]offender[ ] statute and the *1184 sentencing. Thus, the special challenges to the jury allowed a defendant charged with a capital crime are not necessitated when the principal offense is noncapital.

Id.

¶ 16. This Court addressed the issue in Jones v. State, 902 So.2d 593 (Miss.Ct.App.2004). In Jones, the defendant was convicted of robbery, but he was sentenced under the habitual-offender statute. Id. at 595 (¶4). Using the same reasoning as Osborne, this Court found “because Jones’s offense was noncapital, the statutory and rules provisions which provide extra peremptory challenges to the venire in capital cases were inapplicable.” Id. at 599 (¶ 19).
¶ 17. Foxworth asks this Court to reconsider these earlier case-law precedents. Nonetheless, we will not ignore clearly established case law. The jury found Fox-worth guilty of possession of cocaine, a controlled substance, which is a noncapital offense. Because Foxworth’s offense was noncapital, the rules providing twelve peremptory challenges in capital cases do not apply. Therefore, Foxworth was only entitled to the regular number of six peremptory challenges. We find this issue is without merit.
IV. JNOV/New Trial
¶ 18. In his next assignment of error, Foxworth challenges the circuit court’s denial of his motion for a new trial or, in the alternative, a JNOV. He argues the circuit court erred by denying his motion because the State failed to provide evidence that Foxworth “knowingly” possessed cocaine.
¶ 19. In order to convict a defendant of possession of a controlled substance, the State must prove he had actual or constructive possession of the controlled substance, coupled with knowledge of the presence of the drug. Miss.Code Ann. § 41-29-139(c) (Supp.2011). “This [Cjourt must weigh the facts and circumstances of [the] individual case to determine whether the State has met their burden.” Nance v. State, 948 So.2d 459, 461 (¶ 5) (Miss.Ct.App.2007) (citing Kerns v. State, 923 So.2d 196, 199-200 (¶11) (Miss.2005)). The State is required to prove “that [the] defendant was aware of the presence and character of the particular substance and was intentionally and consciously in possession of it.” Id.
A. Motion for a New Trial
¶ 20. A motion for a new trial challenges the weight of the evidence. Bush v. State, 895 So.2d 836, 844 (¶ 18) (Miss.2005). When reviewing a denial of a motion for a new trial, “we will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.” Id. (citing Herring v. State, 691 So.2d 948, 957 (Miss.1997)).
¶ 21. In this case, the jury’s verdict did not present an “unconscionable injustice,” and the State provided ample evidence to support a conviction. The jury heard the testimony of Officer Keckler who described the events of that night and his search of Foxworth. He also testified regarding the bag of cocaine found in Fox-worth’s pants. The jury also heard the testimony of Timothy Gross from the Mississippi State Crime Laboratory. Gross testified that the bag found on Foxworth contained approximately 7.6 grams of cocaine, a Schedule II controlled substance. Officer Keckler’s testimony detailing where and how he found the cocaine, in conjunction with Gross’s testimony about the amount of the substance, is sufficient to prove Foxworth was in possession of an illegal amount of a Schedule II controlled substance. Therefore, the verdict is not against the overwhelming weight of the evidence.
*1185 B. Motion for a JNOV
¶ 22. A motion for a JNOV implicates the sufficiency of the evidence. Bush, 895 So.2d at 843 (¶ 16). “[T]he critical inquiry is whether the evidence shows ‘beyond a reasonable doubt that [the] accused committed the act charged, and that he did so under such circumstances that every element of the offense existed[.]’” Id. If, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, this Court will affirm the denial of the motion for a JNOV. Id.
¶ 28. Foxworth cites Flores-Figueroa v. United States, 556 U.S. 646, 129 S.Ct. 1886, 173 L.Ed.2d 853 (2009), as authority for his proposition that the State failed to prove he “knowingly” possessed cocaine. However, in Flores-Figueroa, the United States Supreme Court was addressing the portions of the statute to which the “knowingly” requirement applied. That case is not applicable to the case at hand. Under Mississippi Code Annotated section 41-29-139(c), the term “knowingly” clearly applies to the possession of the controlled substance. The actual issue is whether the State failed to prove that element of the crime.
¶ 24. Considering the evidence in the light most favorable to the verdict, the State established Foxworth did knowingly possess cocaine. The cocaine was discovered inside of Foxworth’s undergarments packaged in a clear plastic bag. It is reasonable to infer from the location of the cocaine that Foxworth knew he was illegally in possession of a controlled substance. If evidence of a controlled substance found in a defendant’s undergarments cannot prove the defendant had knowledge of that substance, the State would have an almost impossibly high burden to meet. It is difficult to think of a circumstance in which it is more likely that one did, in fact, know he or she was in possession of a controlled substance. This Court has repeatedly upheld convictions where the only evidence to prove the knowledge requirement was actual possession. Nance, 948 So.2d at 461 (¶ 6) (upholding a conviction of possession of a controlled substance when cocaine was found on the defendant’s person during a routine booking at the jail house); Harris v. State, 921 So.2d 366, 372 (¶27) (Miss.Ct.App.2005) (finding evidence sufficient to support a conviction of possession of cocaine where the State presented evidence of an officer who testified he saw the defendant possess cocaine); Burnett v. State, 876 So.2d 409, 412 (¶12) (Miss.Ct.App.2003) (finding the defendant knowingly possessed cocaine when it was discovered on his person during a search incident to arrest).
¶ 25. We find the circuit court did not err in denying Foxworth’s motion for a new trial or, in the alternative, a JNOV.
V. Sentence
¶ 26. In his final argument, Fox-worth contends his sentence as a habitual offender of life imprisonment without eligibility for parole or probation based on a conviction of possession of a controlled substance violates Mississippi Code Annotated section 41-29-150(g), which states: “It is the intent and purpose of the Legislature to promote the rehabilitation of persons convicted of offenses under the Uniform Controlled Substances Law.”
¶ 27. “Sentencing is within the complete discretion of the trial court and not subject to appellate review if it is within the limits prescribed by statute.” Clay v. State, 20 So.3d 743, 747 (¶ 9) (Miss.Ct.App.2009) (quoting Hoops v. State, 681 So.2d 521, 537 (Miss.1996)). Furthermore, “[i]t is the [Legislature's duty to set the length of sentences for criminal offenses and not the duty of this Court.” Burrell v. State, *1186 727 So.2d 761, 769 (¶ 26) (Miss.Ct.App.1998). Because the sentence imposed on Foxworth is within the guidelines set out by the Legislature in Mississippi Code Annotated section 99-19-83, we find no error.
¶ 28. Although no discussion is required on this issue, we will further address Fox-worth’s argument. Foxworth argues the sentence of life imprisonment without eligibility for parole or probation based on an underlying controlled-substance conviction would negate the purpose of section 41-29-150(g) — that purpose being rehabilitation. Foxworth is subject to the habitual-offender statute because of his previous two convictions, in addition to his conviction in this case. While it is the Legislature’s intent to rehabilitate those addicted to controlled substances, the Legislature, in enacting section 99-19-83, also intended to prevent recidivism of those unable to be rehabilitated. It was surely not the intent of the Legislature in enacting section 41-29-150(g) to allow defendants to escape habitual-offender status simply because their third conviction is a drug offense. Thus, this argument is without merit.
¶ 29. THE JUDGMENT OF THE HARRISON COUNTY CIRCUIT COURT OF CONVICTION OF POSSESSION OF A CONTROLLED SUBSTANCE AND SENTENCE AS A HABITUAL OFFENDER OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITHOUT ELIGIBILITY FOR PAROLE OR PROBATION IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HARRISON COUNTY.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., ROBERTS, CARLTON AND MAXWELL, JJ„ CONCUR. BARNES, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. RUSSELL, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. MYERS, J., NOT PARTICIPATING.

. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).